NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NASSER BARBOUR<br>    Plaintiff,<br> v.<br>ERIC H. HOLDER, JR., Attorney General of the United States, JANET NAPOLITANO, Secretary for Department of Homeland Security, THE UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"), EMILIO GONZOLES, JR., USCIS director, and JOHN THOMPSON, USCIS Newark, New Jersey Director,<br>    Defendants. | Civ. Action No. 09-3062 (KSH)<br><br><br><br><br><br><br><br>OPINION |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I. Introduction**

Pending before this Court is the motion of defendants, Eric H. Holder, Janet Napolitano, The United States Citizenship and Immigration Services ("USCIS"), Emilio Gonzales, Jr., and John Thompson, seeking dismissal of the complaint filed by plaintiff Nasser Barbour on the grounds that: (1) the complaint is legally deficient because Barbour has failed to state a claim for which relief can be granted, and (2) this Court lacks subject matter jurisdiction to review the determinations made by the USCIS. Barbour brought this action to compel the USCIS to reverse its April 21, 2009 Administrative Appeals Office ("AAO") decision denying Barbour's application for permanent resident status under the Legal Immigration Family Equity (LIFE)

1

Act, Pub. L. No. 106-553, 114 Stat. 2762A, 149 § 1104(f) (2000), for failure to demonstrate basic citizenship skills under § 1103(c)(2)(E)(I) of the LIFE Act.

## II.     Background

### A.     Barbour's Complaint

The following factual summary is based on the allegations in Barbour's complaint. Barbour, a citizen of Syria, has been living in this country since prior to January 1, 1982, is married, and has five children who are U.S. citizens. (Compl. ¶ 1.) On April 2, 2002, Barbour submitted his LIFE Legalization I-485 application for an adjustment of status. (*Id.* ¶¶ 2, 16.) Under the LIFE Act, an adjustment of status to "lawfully admitted for permanent residence" would accord Barbour the privilege of remaining in the U.S. permanently. (*Id.* ¶ 14.) To be eligible for an adjustment of status, Barbour was required to show "class membership, continuous unlawful residence, continuous physical presence, admissibility and meet basic English language and history/civics requirements." (*Id.* ¶ 15; *see infra*, Part B, *LIFE Act Basic Citizenship Skills Requirement*.)

Barbour appeared for his first LIFE interview at the Newark USCIS offices on November 7, 2002. (Compl. ¶ 17.) On December 1, 2003, he appeared for his second LIFE interview. (*Id.* ¶ 18.) In August of 2006, the USCIS issued a Notice of Intent to Deny (NOID) the application. *Id.* at ¶ 20. Though there was initially a dispute as to whether Barbour received the NOID, he acknowledges in the opposition brief that his "LIFE legalization application was reopened and a new NOID issued. (*Id.* ¶ 20; Opp'n. Br.. 1.)

On March 9, 2007, the USCIS sent Barbour a denial notice stating that his application was denied for failure "to demonstrate knowledge of the English language. (Compl. ¶¶ 2, 21.)

On March 13, Barbour's former attorney went to the USCIS offices in an attempt to respond to the earlier NOID, but because the file had already been sent out, instead instituted an appeal. (*Id.* ¶ 22.)

In November of 2007, while on appeal with the AAO, Barbour submitted additional evidence, in the form a letter, confirming he was "satisfactorily pursuing" a course of study in an Adult Basic Skills/English as a Second Language Program to satisfy the LIFE Act English Civics requirements. (*Id.* ¶¶ 2, 23-24.) On April 21, 2009 the USCIS AAO issued a denial on the grounds that Barbour had not satisfied the English/Civics requirements because he had not provided evidence "to demonstrate that he had completed or was attending classes 'at the time of the second interview.'" (*Id.* ¶ 24.)

Barbour then filed the instant action alleging that the USCIS failed to consider evidence, and challenging the USCIS "policy or procedure" of refusing to accept evidence that he was in the process of fulfilling the English/Civics requirement at the time of the appeal. The complaint sought mandamus, declaratory, and injunctive relief requiring the USCIS to reverse its decision and find him eligible for an adjustment of status.[1] (*Id.* ¶¶ 4, 24-25.) Barbour first alleges that:

> In a decision dated, April 21, 2009, the USCIA AAO issued a denial. . . . [T]he AAO refused to accept the evidence of satisfaction of the English/Civics requirements stating that the applicant had not provided evidence to demonstrate that he had completed or was attending classes 'at the time of the second interview.'

---

[1]As mentioned earlier, Barbour also alleged in the complaint that the USCIS's initial denial of his application was defective because the NOID had not been properly issued. In his opposition brief, however, Barbour acknowledged that his LIFE application was reopened and a new NOID was issued, and therefore proceeds only on his claim that the USCIS AAO failed to consider proof that he had satisfied the civics and citizenship requirements of LIFE on appeal.

(*Id.* ¶ 24.) Additionally, Barbour "challenges the Defendants policy or procedure . . . of not properly considering evidence that he was taking the appropriate classes in determination that he is eligible for adjustment of status." (*Id.* ¶ 25.)

### B. LIFE Act Basic Citizenship Skills Requirement

The LIFE Act was enacted by Congress to establish procedures for participants in three class action lawsuits, against the then Immigration Nationalization Services (INS), to legalize. To be eligible to apply for an adjustment of status under section 1104 of the LIFE Act, an alien must have filed for class membership with the Attorney General before October 1, 2000, in one of three legalization lawsuits: *Catholic Social Services, Inc. v. Meese*, 685 F. Supp. 1149 (E.D. Cal. 1988), *vacated sub nom. Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993)**;** *League of United Latin American Citizens v. INS,* No. 87-4757-WDK, 1989 WL 252578 (C.D. Cal. Aug. 12, 1988), *vacated sub nom. Reno v. Catholic Social Services, Inc.,* 509 U.S. 43 (1993); *Zambrano v. INS,* No. S-88-455 (E.D. Cal. Aug 9, 1988), *vacated sub nom. Reno v. Catholic Social Services, Inc.,* 509 U.S. 43 (1993).

An eligible alien may adjust his or her status to that of a lawful permanent resident if:

> (a) He or she properly files, with fee, Form I–485, Application to Register Permanent Residence or Adjust Status, with the Service during the application period beginning June 1, 2001, and ending June 4, 2003.
>
> (b) He or she entered the United States before January 1, 1982, and resided continuously in the United States in an unlawful status since that date through May 4, 1988;
>
> (c) He or she was continuously physically present in the United States during the period beginning on November 6, 1986, and ending on May 4, 1988;

>(d) He or she is not inadmissible to the United States for permanent residence under any provisions of section 212(a) of the Act, except as provided in §245a.18, and that he or she:
>
>>(1) Has not been convicted of any felony or of three or more misdemeanors committed in the United States;
>>
>>(2) Has not assisted in the persecution of any person or persons on account of race, religion, nationality, membership in a particular social group, or political opinion; and
>>
>>(3) Is registered or registering under the Military Selective Service Act, if the alien is required to be so registered; and
>
>(e) He or she can demonstrate basic citizenship skills.

8 C.F.R. § 245a.11.

At issue here is whether Barbour met the basic citizenship skills requirement for a status adjustment. An applicant may prove that he has met the citizenship requirement in three ways: (1) by showing proficiency in the English language and in U.S. history by passing the required tests pursuant to 8 C.F.R. §§312.1 and 312.2; (2) by obtained a high school diploma or GED in the U.S. that contains an English proficiency requirement; or (3) satisfying the citizenship skills requirement by showing he:

>has attended, or is attending, a state recognized, accredited learning institution in the United States, and that institution certifies such attendance. The course of study at such learning institution must be for a period of one academic year (or the equivalent thereof according to the standards of the learning institution) and the curriculum must include at least 40 hours of instruction in English and United States history and government. **The applicant may submit certification on letterhead stationery from a state recognized, accredited learning institution either at the time of filing Form I–485, subsequent to filing the application but prior to the interview, or at the time of the interview** (the applicant's name and A-number must appear on any such evidence submitted).

8 C.F.R. § 245a.17(a)(1)-(3) (emphasis added). The applicant may take the English, U.S. history, and government tests at the time of the LIFE interview, if he chooses to fulfill the citizenship skills requirement in that manner. 8 C.F.R. § 245a.17(b). If the applicant fails those tests, after six months he is afforded a second interview to retake the tests, or to submit other evidence that demonstrates that the citizenship skills requirement has been met. *Id.*

      C.     *The AAO Decision*

The April 21, 2009 AAO decision denying Barbour's appeal discusses additional facts relevant to deciding this motion. In reviewing Barbour's application process, the AAO noted that:

> Pursuant to 8 C.F.R. § 245a.17(b), the applicant was interviewed twice in connection with his application - on November 7, 2002, and again on December 1, 2003. On both occasions, the applicant failed to pass the English writing test. Therefore, the director denied the application on March 3, 2007.

(AAO Decision, Apr. 21, 2009 at 4.) The AAO also addressed the November 14, 2007 letter, which Barbour submitted into evidence at the time of appeal, indicating he was participating in an English as a Second Language Program.

> On appeal, counsel asserts that the director was incorrect in denying the application. In support of the appeal, counsel provides a letter, dated November 14, 2007, from Cathi Zadroga, Head Teacher at the Jersey City Adult Education Center, Jersey City, New Jersey, confirming that the applicant is participating in an Adult Basic Skills/English as a Second Language program (from "September - June").

(*Id.*)

Despite Barbour's letter, the AAO ultimately determined that he had not satisfied the basic citizenship skills requirement.

6

> The applicant had not provided evidence of having passed a standardized citizenship test, as permitted by 8 C.F.R. § 312.3(a)(1). The applicant does not have a high school diploma or a GED from a United States school, and therefore does not satisfy the regulatory requirement of 8 C.F.R. § 245a.17(a)(2). Nor has the applicant provided evidence to demonstrate that he had completed or was attending **at the time of the second interview** a state recognized, accredited learning institution in the United States . . . as allowed under 8 C.F.R. § 245a.17(a)(3).
>
> Therefore, the applicant does not satisfy either alternative of the 'basic citizenship skills' requirement set forth in section 1104(c)(2)(E)(I) of the LIFE Act.

(*Id.*) (emphasis in original.)

### III. Discussion

Pursuant to FRCP 12(b)(1), when a defendant challenges subject matter jurisdiction the plaintiff bears the burden of persuasion. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Barbour alleges that this Court has jurisdiction under the LIFE Act to challenge a pattern or practice used by the USCIS. (Compl. ¶ 5.) Alternatively, he argues that this court has jurisdiction under the Administrative Procedures Act, 5 U.S.C. § 701 et seq., the Mandamus Act, 28 U.S.C. 1361, and the Declaratory Judgment Act, 28 U.S.C. 2201. (*Id.*)

With respect to judicial review, the LIFE Act in pertinent part provides:

> the provisions of subparagraphs (A) and (B) of section 245A(f)(4) of the Immigration and Nationality Act (8 U.S.C. 1255a(f)(4)) shall apply to administrative or judicial review of a determination under this section or of a determination respecting an application for adjustment of status under section 245A of the Immigration and Nationality Act filed pursuant to this section.

7

*Id.* § 1104(f).

While it would be tempting to assess the merits of the claim, this Court is satisfied that it does not have jurisdiction to do so. Defendants argue that the complaint must be dismissed because the Court is stripped of jurisdiction to entertain Barbour's claims. Section 1255(a)(f)(4) of Title 8 of the United States Code limits judicial review under LIFE. Section 1225a(f) states that there shall be no judicial review of a determination respecting an application for adjustment of status except "an order of deportation under section 1105a of this title (as in effect before October 1, 1996)" and that:

> [s]uch judicial review shall be based solely upon the administrative record established at the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.

8 U.S.C. § 1225a(f)(4)(A),(B). Additionally, § 1252(b)(2) states that "a petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *See also Reno v. Catholic Soc. Servs.,* 509 U.S. 43, 54 (1993) ("We call the right to judicial review 'latent' because § 1255a(f)(4)(A) allows judicial review of a denial of adjustment of status only on appeal of 'an order of deportation.'"). Because Barbour has not appealed a deportation order nor filed his claim to the Third Circuit, this Court does not have jurisdiction pursuant to the express statutory grant of judicial review in the LIFE Act.

Notwithstanding, Barbour argues that the nature of this particular matter is such that this Court does have jurisdiction. Barbour claims that judicial review is available in the district court to permit a challenge to the USCIS practices or procedures used in reviewing his application.

(Compl. ¶ 5.) On the other hand, defendants argue that Barbour's claim concerns only the denial of his application, a single act as opposed to a practice or a procedure used in decision-making, and, therefore, even if jurisdiction existed to review a pattern or practice claim, no such claim exists here. (Reply Br. 5.)

In *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 484 (1991), the Supreme Court created an exception to the statutory bar on judicial review of individual determinations, holding that district courts have jurisdiction to entertain collateral challenges to unconstitutional practices and polices generally used by the INS.[1] *McNary* involved a different statutory scheme, the "Special Agricultural Workers" (SAW) amnesty program for specialized alien farm workers. *Id.* at 483. A class of seventeen aliens was denied SAW status, and filed suit in district court alleging the unconstitutionality of several INS policies. *Id.* at 487. They alleged that the SAW interviews were conducted in an arbitrary fashion and that they had been denied the opportunity to challenge adverse evidence and to present witnesses, had not been provided with competent interpreters, and recordings of their interviews were not made. *Id.* at 487-88. In permitting the constitutional "pattern or practice" claims to move forward in district court, the Court noted that the procedures attacked by the claimants impeded the development of adequate administrative records and, therefore, the Court of Appeals would have an inadequate record upon which to review a later deportation order. *Id.* at 496.

Barbour argues that his claim is akin to that made in *McNary* and that made in *Immigrant Assistance Project of the Los Angeles County AFL-CIO v. Immigration and Naturalization Service*, 306 F.3d 842, 847 (9th Cir. 2002), where a class of aliens was permitted to challenge,

---

[1] At the time of the *McNary* decision, the USCIS was still operating as the Immigrant and Nationalization Service (INS).

9

pursuant to the *McNary* exception, the implementation of a burden-shifting procedure that made it unduly burdensome to meet the legalization application requirements.  Defendants argue, and this Court agrees, that these cases are plainly distinguishable from present action.

As the Third Circuit noted, "[i]n arriving at its holding, the *McNary* Court distinguished claims 'alleging a pattern or practice' of unconstitutional conduct in the administration of the [ ] program from challenges to individual status determinations that [the statute] shields from judicial review."  *Hernandez v. Chertoff*, 138 F. App'x 473, 477 (3d Cir. 2005).  A determination "describes a single act rather than a group of decisions or a practice or procedure employed in making decisions."  *McNary*, 498 U.S. at 492.

In *Hernandez*, the Third Circuit, reviewing the decisions of other circuits, concluded that for subject matter jurisdiction to attach under the *McNary* exception the applicant must allege "that a consistently applied policy violated the rights of an entire class of claimants." *Hernandez,* 138 F. App'x at 477 (quoting *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)); *see also Ortiz v. Meissner,* 179 F.3d 718, 721 (9th Cir. 1999) ("The [*McNary*] Court . . . reasoned that . . . limiting judicial review over 'determinations respecting an application,' referred to review of denials in individual cases, not attacks on collateral procedures used in all cases."); *Naranjo-Aguilera v. INS*, 30 F.3d 1106, 1110 (9th Cir. 1994) (characterizing *McNary* exception as applicable to "lawsuits in which large groups of plaintiffs challenged across-the-board INS practices").

As discussed above, Barbour has failed to allege facts to suggest that the AAO has an unconstitutional policy or procedure, nor has he alleged that any such procedure is generally used by the AAO, nor has he alleged that the AAO has applied any unconstitutional procedure to

violate the rights of a group of claimants.  Barbour only alleges that the AAO did not consider the November 14, 2007 letter admitted as evidence during his appeal.  Stating that the AAO had a "policy or procedure" of not considering this particular letter (or letters like this one) is not sufficient to establish that a "policy or procedure" indeed exists.  Moreover, Barbour seeks to have the AAO's individual determination about his specific application overturned, which fundamentally is at odds with *McNary* in which the claimants sought to challenge, not their ultimate individual status determinations, but the unconstitutionality of general procedures the INS used in the process.  *See Jimenez-Mora v. Ashcroft*, 86 F. App'x 527, 529-30 (3d Cir. 2004).  "If we were to accept [plaintiff's] claim that her argument merely involves a collateral attack on the *procedures* used in making a determination, it is hard to imagine a case that would *not* fall outside the jurisdictional bar . . . ." *Id.* at 530.

        Barbour's claim is plainly distinguishable from both *McNary* and *Immigrant Assistance Project*.  He has not filed a class action, and he seeks to overturn an individual determination, as opposed to challenge the legality of a procedure used by the AAO.  Moreover, unlike the plaintiffs in *McNary*, Barbour has not been deprived of a meaningful administrative review of his application.  The evidence complained of, the November 14th letter, has been submitted into the record.  So the alleged procedure complained of has not prevented Barbour from creating an adequate administrative record for appeal of a later deportation order.  Barbour's "assertions amount to no more than [an] argument that [defendants] wrongly applied its alleged practice . . . *in his case*" and § 1225a(f) expressly forbids district courts from exercising jurisdiction under these circumstances.  *Hernandez,* 138 F. App'x at 478.

In the alternative, Barbour argues that this Court has jurisdiction to hear his claims under the Administrative Procedure Act (APA), because there is no alternative remedy available to him. The APA allows federal courts to review "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. The APA states, however, that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see also A.O. Smith Corp. v. Fed. Trade Comm'n*, 530 F.2d 515, 521 (3d Cir. 1976) ("a person aggrieved by final agency action may [seek relief in] federal court so long as . . . no statute precludes such relief"); *Qureshi v. AAO of the Bureau of USCIS,* No. 1:08-CV-2281, 2009 U.S. Dist. LEXIS 58262 at *10-11 (M.D. Pa. Jul. 9, 2009). Therefore, "[a]lthough the APA typically permits judicial review of final agency decisions when there is no other administrative remedy, . . . the statute clearly states that when another statutory provision forecloses relief, judicial review under the APA is prohibited." *Qureshi*, 2009 U.S. Dist. LEXIS 58262 at *13; *see Cunningham v. R.R. Ret. Bd.,* 392 F.3d 567, 578 (3d Cir. 2004) (holding unreviewable decisions of the Railroad Retirement Board under the APA because the Railway Unemployment Insurance Act created an exclusive system to review of Board decisions).

Section 1255a(f) "unambiguously prohibits judicial review of agency decisions except in conjunction with a final order of removal." *Qureshi,* 2009 U.S. Dist. LEXIS 58262 at *14. While Barbour claims no alternative remedy is available to him, now that his adjustment for status has been denied, removal proceedings may resume, or Barbour may seek to have those proceedings resumed. He will have the opportunity to appeal a final order for removal to the appropriate court of appeals. *See Orquera v. Ashcroft*, 357 F.3d 413, 415-16 (4th Cir. 2003)

12

(noting that after petitioner's applications for amnesty had been denied, they requested the INS commence removal proceedings so they would have the opportunity to obtain judicial review to challenge the denial of their applications).  Barbour's claim under the APA therefore fails for lack of subject matter jurisdiction.

Barbour also alleges this Court has jurisdiction under the mandamus statute, 28 U.S.C. § 1361, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  However, the complaint does not identify any duty that the AAO failed to perform.  It heard his appeal, considered the evidence, and rendered a decision.  "It is well established that mandamus jurisdiction does not attach to compel the favorable adjudication of an application." *Hussain v. United States*, 2009 U.S. Dist. LEXIS 67008 at *16 (E.D.N.Y. Aug. 3, 2009) (denying mandamus jurisdiction where petitioner sought to direct the USCIS to re-open his LIFE Act application for adjustment of status to accept additional evidence); *see also Patel v. Chertoff,* No. PJM-05-1304, 2006 U.S. Dist. LEXIS 97630, at *11-12 (D. Md. Aug. 31, 2006) (denying motion for reconsideration of a motion to dismiss for lack of mandamus jurisdiction where petitioner sought to challenge USCIS determination on his adjustment of status application); *Keane v. Chertoff,* 419 F.Supp.2d 597, 599-601 (S.D.N.Y. 2006) (denying mandamus jurisdiction where petitioner sought to compel defendant to overrule its decision to deny her adjustment of status application); *Espin v. Gantner*, 381 F.Supp.2d 261, 264-65 (S.D.N.Y. 2005) (denying jurisdiction over an action to compel USCIS to approve adjustment application).  Accordingly, this Court does not have jurisdiction pursuant to the mandamus statute.

Finally, this Court lacks jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Section 2201 states that a court may "declare the rights and other legal relations of any interested party seeking such a declaration" only "[i]n a case of actual controversy within its jurisdiction." As detailed extensively above, this Court lacks jurisdiction over Barbour's claim under the LIFE Act, the APA, and the Mandamus Act, and therefore does not have the authority to issue a declaratory judgment. *See also Patel,* 2006 U.S. Dist. LEXIS 97630 (denying motion for reconsideration of a motion to dismiss petitioner's claim seeking a declaratory judgment and writ of mandamus challenging a USCIS LIFE application determination, noting that "'Over no conceivable subject is the legislative power of Congress more complete than it is over [immigration],'" and there are "few subjects over which the jurisdiction of the federal courts has been more extensively proscribed.") (quoting *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339 (1909)); *Hernandez,* 138 F. App'x at 478 n.5 (concluding no subject matter jurisdiction exists and the LIFE act and noting that while plaintiff contends that subject matter jurisdiction is appropriate under the Mandamus Act, Declaratory Judgment Act, and APA, "[n]one of those provisions . . . provide an independent basis for jurisdiction.").

## V.     Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction to review the AAO's individual determination as to Barbour's application for an adjustment of status under the LIFE Act. Defendants' motion to dismiss is granted. An appropriate order will be filed.

/s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.